**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

TRAVIS LASHAUN WATSON,            )
                                  )
                Petitioner,       )
                                  )
        v.                        )        1:19CV249
                                  )
DENNIS DANIELS,                   )
                                  )
                Respondent.       )

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 7; <u>see also</u> Docket Entry 9 (memorandum in support).) Respondent has moved for summary judgment on the merits, as well as on grounds of non-exhaustion. (Docket Entries 11, 12.) For the reasons explained more fully below, the undersigned United States Magistrate Judge will recommend that the Court deny the instant Petition on its merits.

## I. Background

On September 7, 2005, in Guilford County Superior Court, Petitioner pled guilty to two counts of felony second degree rape, conspiracy to commit second degree rape, second degree kidnapping, and possession of a stolen vehicle in cases 04 CRS 78728, 04 CRS 78731, and 04 CRS 69837, respectively. (<u>See</u> Docket Entry 12-2.) After consolidating the rape offenses and consolidating the kidnapping and possession of a stolen vehicle offenses, the trial court imposed consecutive prison sentences of 96 to 125 months and 27 to 42 months, respectively. (<u>See</u> <u>id.</u>) Petitioner also received

a five-year term of post-release supervision ("PRS"), which he began to serve on April 16, 2015, see Watson v. Daniels, No. 1:18CV451, Docket Entry 13-4 at 1 (M.D.N.C. Jul. 9, 2018).[1]

On December 29, 2016, officers with the Greensboro Police Department arrested Petitioner on two new felony charges (see Docket Entry 12-7 at 10-13) and detained Petitioner in the Guilford County jail (Docket Entry 9 at 1-2). On January 3, 2017, the Post Release Supervision and Parole Commission ("PRSPC") arrested Petitioner on a warrant for post-release supervision violations based on the new felony charges. See Watson, No. 1:18CV451, Docket Entry 13-4 at 1. Petitioner appeared before the PRSPC on January 13, 2017, and signed a waiver of his right to a preliminary hearing and a hearing before the PRSPC, which provided as follows:

> I do hereby waive my right to a Preliminary Hearing and [PRSPC] Hearing **until pending North Carolina criminal charges have been disposed of by the [c]ourts.** I do understand the purpose of these hearings is to determine whether there is probable cause to believe that I have violated the condition(s) of my Parole/Conditional Release/[PRS] heretofore granted by the North Carolina [PRSPC]. **I do also understand that I can request the Preliminary Hearing to be held prior to the pending charges['] disposition by contacting my Probation/Parole Officer in writing.**

Watson, No. 1:18CV451, Docket Entry 13-8 (emphasis in original).

On May 22, 2017, Petitioner transferred from the Guilford County jail to the Craven Correctional Institution ("Craven CI").

---

[1] In civil action 1:18CV451, Petitioner brought an action under 28 U.S.C. § 2254 challenging his 2005 convictions and sentences, which the undersigned dismissed with prejudice on January 31, 2019. See Watson, No. 1:18CV451, Docket Entries 31, 32 (M.D.N.C. Jan. 31, 2019). Throughout this Recommendation, pin citations to page numbers refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

Case 1:19-cv-00249-LCB-LPA   Document 17   Filed 12/03/19   Page 2 of 24

(See Docket Entry 7 at 5; see also Docket Entry 9 at 1-2.)[2] According to Petitioner's filings in another case he brought in this Court arising out of his transfer to Craven CI, Petitioner transferred back to the Guilford County jail just eight days later on May 30, 2017, and remained there until June 22, 2017, when he returned to the Craven CI. See Watson v. State of North Carolina Post Release Supervision and Parole Commission, No. 1:17CV977, Docket Entry 2 at 9, 19, 22, 24, 26, 30, 34 (M.D.N.C. Oct. 26, 2017). Eighteen days later, on July 10, 2017, Petitioner transferred back to the Guilford County jail and remained there until August 1, 2017, when he transferred to the Caswell Correctional Center ("Caswell CC"). See id.[3] On October 4, 2017, Petitioner transferred back to the Guilford County jail where he remained through his trial in late February 2018. (See Docket Entry 9 at 4.)

In November 2017, Petitioner filed a pro se "Application for a Writ of Habeas Corpus" and/or a "Motion to Dismiss" with the trial court seeking dismissal of his pending 2016 criminal charges

---

[2] The Craven CI is located in Vanceboro, North Carolina, see https://www.ncdps.gov/adult-corrections/prisons/prison-facilities/craven-correctional-institution (last visited Dec. 2, 2019), at a distance of approximately 190 miles from the Guilford County jail, see https://www.mapquest.com (enter query for directions from 201 South Edgeworth Street, Greensboro, North Carolina 27401, to 600 Alligator Road, Vanceboro, North Carolina 28586) (last visited Dec. 2, 2019).

[3] The Caswell CC is located in Blanch, North Carolina, see https://www.ncdps.gov/adult-corrections/prisons/prison-facilities/caswell-correctional-center (last visited Dec. 2, 2019), at a distance of approximately 40 miles from the Guilford County jail, see https://www.mapquest.com (enter query for directions from 201 South Edgeworth Street, Greensboro, North Carolina 27401, to 444 County Home Road, Blanch, North Carolina 27212) (last visited Dec. 2, 2019).

due to the alleged revocation of his PRS without a hearing and his intermittent confinement in prison (Docket Entry 12-7 at 34-36; see also Docket Entry 7, ¶ 11(a)), which that court, following a hearing (Docket Entry 12-4), denied on November 22, 2017 (Docket Entry 12-5).[4]

On December 11, 2017, the PRSPC entered an order with regard to Petitioner's PRS which provided as follows:

> In reference to [Petitioner], convicted September 7, 2005 in Guilford County Superior Court, docket number 04CRS078728, two counts of Second Degree Rape, Conspiracy to Commit Second Degree Rape, 96 to 125 months active. He was released on five years post-release supervision on April 16, 2015 and was arrested January 3, 2017 by [PRSPC] warrant for reported post-release violations. The [PRSPC] finds that [Petitioner] is currently incarcerated for the [PRSPC's] January 3, 2017 warrant for which he has pending felony charges against him. The [PRSPC] further finds a preliminary hearing was postponed on January 13, 2017 until these pending charges have been resolved.
>
> Upon further review of his case, the [PRSPC] finds that [Petitioner] has completed service of his maximum term in [his 96 to 125 month] sentence as required by N.C. [Gen. Stat. § 15A-1368.3(c)(1)] and therefore orders he be released from custody effective immediately. This order does not resolve [Petitioner] of any other legal obligations such as for the pending charges in Guilford County or for the registration requirement for [his 96 to 125 month] sentence.

Watson, No. 1:18CV451, Docket Entry 13-3 at 1 (emphasis added).

In response to an inquiry from Petitioner, Mary Stevens, Chief Administrator of the PRSPC, wrote Petitioner a letter enclosing and explaining the above-quoted order of the PRSPC, which provided, in pertinent part, as follows:

---

[4] The record does not contain a copy of Petitioner's Application for a Writ of Habeas Corpus.

-4-

> This will acknowledge receipt of your recent
> correspondence dated May 27, 2018 to Governor Roy Cooper.
> In answer to your concerns, <u>the [PRSPC] did not revoke
> your [PRS] for your previously-incarcerated [96 to 125
> month] sentence</u>. In December 2017, the [PRSPC] rescinded
> or stopped further [PRS] proceedings in your case and
> ordered that you be released from the [PRS] requirement
> of [your 96 to 125 month] sentence. Enclosed is a copy
> of that order. This means that the five (5) year [PRS]
> requirement for [that sentence] was completed effective
> December 11, 2017 <u>because you had served your maximum
> sentence term</u>.

<u>Id.</u>, Docket Entry 13-3 at 2 (emphasis added). Petitioner
apparently remained dissatisfied with that explanation, as Ms.
Stevens sent Petitioner another letter dated June 25, 2018,
explaining as follows:

> This will acknowledge receipt of your recent
> correspondence dated June 18, 2018 in which you requested
> additional information concerning the post-release
> violation process of your previous confinement. You
> expressed concerns that no probable cause hearing took
> place in your case.
>
> . . . [Y]ou waived your right to a preliminary hearing
> and [PRSPC] hearing until your pending North Carolina
> criminal charges had been disposed of by the [c]ourts.
> Your signed waiver is why the [PRSPC] did not proceed
> with the hearing process in your case in 2017. <u>Some
> county jails choose to send incarcerated persons to [the
> Department of Adult Corrections ('DAC')] (prison) custody
> after a [PRSPC] warrant has been served, even when there
> are pending charges in that county</u>. The [PRSPC]'s order
> of December 11, 2017 released you from DAC custody back
> to the county jail. Your public record in the
> [Department of Public Safety] website shows that post-
> release supervision in your previous confinement ended
> December 11, 2017.

(Docket Entry 16-6 (emphasis added).)

On March 1, 2018, a jury convicted Petitioner of felony
robbery with a dangerous weapon (offense date December 22, 2016),
possession of a firearm by a convicted felon (offense date December
29, 2016), and attaining habitual felon status (offense date

-5-

December 29, 2016) in cases 16 CRS 92606, 16 CRS 92616, and 17 CRS 24032, respectively. (See Docket Entry 7, ¶¶ 1, 2, 4-6; see also Docket Entry 12-6.) The trial court sentenced Petitioner to consecutive terms of 96 to 128 months and 97 to 129 months in prison. (See Docket Entry 7, ¶ 3; see also Docket Entry 12-6.) The trial court ordered that Petitioner receive credit for the 427 days he spent in pretrial confinement against his sentences. (Docket Entry 12-6 at 2.) Petitioner appealed (see Docket Entry 7, ¶ 8), and his case remains pending in the North Carolina Court of Appeals, State v. Watson, No. COA 18-1254 (N.C. App. Dec. 11, 2018).

In May 2018, Petitioner filed a Petition under 28 U.S.C. § 2254 with this Court attacking his 2005 convictions on the ground that his "[PRS] was revoked and [he was] returned to prison without a revocation hearing and without any official determination of wrongdoing." Watson, No. 1:18Cv451, Docket Entry 2, ¶ 12(Ground One). The undersigned United States Magistrate first recommended denial of the Petition as moot, because it challenged only the procedures surrounding and conditions of Petitioner's term of PRS, which expired on December 11, 2017. See Watson, No. 1:18CV451, 2018 WL 6728041, at *3-4 (M.D.N.C. Dec. 21, 2018) (unpublished). The undersigned alternatively recommended denial of the Petition on its merits, because the PRSPC did not revoke Petitioner's PRS and thus did not deny Petitioner his due process rights by failing to hold a revocation hearing, and noting that the expiration of Petitioner's term of PRS on December 11, 2017, mooted any need for

-6-

a preliminary (or probable cause) hearing after that point.  See id. at *4-5; see also id. at *5 (recommending denial of certificate of appealability).[5]

Petitioner subsequently filed his instant Petition in this Court on February 25, 2019, along with a memorandum in support, challenging his 2018 convictions.  (Docket Entries 1, 2.)[6] Petitioner filed an Amended Petition as of right under Rule 15(a)(1) of the Federal Rules of Civil Procedure (Docket Entry 7), as well as a supporting memorandum (Docket Entry 8).  The undersigned then granted Petitioner's motion to replace that supporting memorandum with an amended memorandum (Docket Entry 9). See Text Order dated Apr. 3, 2019.  Respondent thereafter filed the instant Motion for Summary Judgment and Supporting Brief (Docket Entries 11, 12), and Petitioner responded in opposition (Docket Entries 15, 16).

## II.  Grounds for Relief

The Petition raises four grounds for relief:

1) "Petitioner [was] denied due process as a pretrial detainee" (Docket Entry 7, ¶ 12(Ground One) (standard capitalization applied)) because, "[o]n [May 22, 2017], Petitioner was sent to prison prior to any adjudication of guilt" and "was in

_____

[5] Because both parties consented to the jurisdiction of the undersigned United States Magistrate Judge, the undersigned withdrew the Recommendation and entered a final Order and a Judgment denying Petitioner's claims as moot and meritless, without a certificate of appealability.  See Watson, No. 1:18CV451, Docket Entries 31, 32  (M.D.N.C. Jan. 31, 2019).

[6] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court should deem the instant Petition filed on February 25, 2019, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities (see Docket Entry 1 at 15).

state custody from [May 22, 2017,] to [December 11,2017], prior to trial" (id., ¶ 12(Ground One)(a));

2) "Petitioner [was] denied [the] right of access to counsel" (id., ¶ 12(Ground Two) (standard capitalization applied)) because, "[o]n [May 22, 2017], Petitioner transferred over 200+ miles away from [the] place of [the] alleged crime and away from [his] court appointed counsel" and "could not relay information to [his] attorney to file [a] motion to suppress evidence" and "could not communicate with counsel to discuss a plea bargain" or "being sent to prison prior to trial" (id., ¶ 12(Ground Two)(a)).

3) "Petitioner [was] denied [the] right to counsel" (id., ¶ 12(Ground Three) (standard capitalization applied)), because "Petitioner's [first] assigned [trial] counsel . . . was not present" at the hearing on Petitioner's Motion to Dismiss and/or Application for a Writ of Habeas Corpus in the trial court, and Petitioner's second trial counsel "stood by but would not represent Petitioner nor address [the] claims of Petitioner's habeas motion" (id., ¶ 12(Ground Three)(a)); and

4) "Petitioner [was] denied [the] right to a fair trial proceeding" (id., ¶ 12(Ground Four) (standard capitalization applied)), because "Petitioner [was] punished and imprisoned in [a] state correctional facility prior to guilt," Petitioner was "housed in [the] same agency as convicted felons, although presumed innocent," Petitioner was "denied access to his attorney to prepare a defense," Petitioner "was not represented at [the] habeas hearing," his "[M]otion to [D]ismiss on above issues was not

-8-

heard," his Application for a Writ of Habeas Corpus was "denied although there was no legal judgement," and a "[p]lea [was] sent to Petitioner through [the] U.S. Mail while [he was] in prison as a pretrial detainee" (id., ¶ 12(Ground Four)(a)).

## III.  Discussion

### A. Exhaustion

Respondent contends that "Petitioner has failed to exhaust state remedies on all his Grounds for Relief as required by 28 U.S.C. § 2254(b)(1)(A) and Respondent[] do[es] not waive non-exhaustion." (Docket Entry 12 at 7.)  Indeed, as Respondent asserts, "Petitioner will have to complete his direct appeal, and then file a post-conviction motion for appropriate relief (MAR) in the Superior Court of Guilford County raising his present claims, . . . [and i]f not satisfied with that court's adjudication, he must first file a certiorari petition in the [North Carolina Court of Appeals] seeking review of the MAR order, before returning to federal court."  (Id.)  Respondent points out that "[t]his Court has the power . . . to adjudicate and deny Petitioner's Grounds for Relief on the merits notwithstanding non-exhaustion and Respondent's refusal to waive non-exhaustion" (id. at 8 (citing 28 U.S.C. § 2254(b)(2))), and urges the Court to "exercise that power here, because Petitioner's Grounds for Relief are without merit, and in order to conserve scarce judicial resources both state and federal."  (Id.)

In response, Petitioner contends that he "did file state habeas and [a M]otion to [D]ismiss, as a pretrial detainee, to

address this matter," that the constitutional errors alleged in his Petition qualify as "structural in nature and should exempt Petitioner from further exhaustion requirement," that "[f]ailure to review this claim would result in a miscarriage of justice," and that "[c]ause/[p]rejudice also exists and should exempt Petitioner from exhaustion." (Docket Entry 7, ¶ 12(Ground One)(b); see also id., ¶ 12(Ground Two)(b), ¶ 12(Ground Three)(b), ¶ 12(Ground Four)(b).) Those arguments fall short.

Even if the Court found that the Motion to Dismiss and/or Application for a Writ of Habeas Corpus Petitioner filed in the trial court in November 2017 raised the substance of Grounds One through Four of the instant Petition (compare Docket Entry 12-7 at 34-36, with Docket Entry 7, ¶ 12), Petitioner glosses over the facts that 1) his direct appeal (which, inter alia, contests the trial court's denial of his Motion to Dismiss (see Docket Entry 12-8 at 18-20)) remains pending, and 2) he has not filed a post-conviction MAR in the trial court challenging his 2018 convictions and/or sentences. Moreover, Petitioner's conclusory assertion of structural error, offered without any supporting facts or law, fails to excuse Petitioner's non-exhaustion. See Sherman v. Smith, 89 F.3d 1134, 1138 (4th Cir. 1996) (defining structural errors as defects "so severe as to render a trial inherently unfair" and cautioning that "judges should be wary of prescribing new errors requiring automatic reversal"). Furthermore, Petitioner's invocation of a miscarriage of justice and cause/prejudice fails both as conclusory and as inapplicable to Petitioner's claims,

-10-

which remain unexhausted but not procedurally defaulted. Thus, the Court presently may not grant habeas relief on any of Petitioner's Grounds for Relief, 28 U.S.C. § 2254(b)(1); however, such claim(s) "may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust [state-court] remedies," 28 U.S.C. § 2254(b)(2) (emphasis added).

**B. Merits**

1. Ground One

Petitioner's first ground for relief contends that "Petitioner [was] denied due process as a pretrial detainee" (Docket Entry 7, ¶ 12(Ground One) (standard capitalization applied)) because, "[o]n [May 22, 2017], Petitioner was sent to prison prior to any adjudication of guilt" and "was in state custody from [May 22, 2017,] to [December 11,2017], prior to trial" (id., ¶ 12(Ground One)(a))." As a corollary to that argument, Petitioner also has asserted that:

> Pretrial detainees have a right to be free from punishment for a crime until convicted of the crime. Pretrial detainees have a right to have their day in court before they are deprived of liberty beyond the restrictions of jail management and security. Under the due process clause, pretrial detainees cannot be punished[.] [Bell v. Wolfish], 441 U.S. 520, 537 n.16 (1979). They can only be detained to ensure their presence at trial, and subjected to rules and restrictions that are reasonably related to jail management and security. To the contrary and prior to his trial, Petitioner was subjected to rules and policies founded on correction, retribution, and deterrence [sic] which all constitute punishment. . . . The deprivation discussed above has undoubtedly prejudiced Petitioner. The State, even after Petitioner voiced this claim at a habeas hearing in Guilford County Superior Court on November 16, 2017 as a pretrial detainee, has disregarded

-11-

> Petitioner's right to due process and proceeded to gain
> a conviction in violation of federal law.

(Docket Entry 9 at 3-4.)  Petitioner's argument fails as moot.

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person <u>in custody</u> pursuant to the judgment of a State court only on the ground that he is <u>in custody</u> in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (emphasis added); <u>see also</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989) (holding that Section 2254 petitioner must, at the time he or she files petition, remain "in custody" pursuant to state conviction or sentence at issue (citing <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968))).  The "in custody" requirement raises a threshold jurisdictional question.  <u>Maleng</u>, 490 U.S. at 490 (stating that "[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States'" (emphasis in original)).

To meet the jurisdictional "in custody" requirement, a petitioner need not remain in <u>actual physical custody</u> of state authorities, as well-settled law holds that an <u>ongoing</u> term of probation or parole constitutes a sufficient restraint on a petitioner's liberty to allow the petitioner to challenge a state sentence under Section 2254.  <u>See</u> <u>Jones v. Cunningham</u>, 371 U.S. 236, 242 (1963) (deeming prisoner on parole still "in custody" for habeas purposes because release from physical confinement remains conditional and "the custody and control of the Parole Board

-12-

involves significant restraints on petitioner's liberty"). However, where a petitioner "elect[s] only to attack [his or her] sentences, and . . . those sentences expired during the course of the[] proceedings, th[e] case is moot." Lane v. Williams, 455 U.S. 624, 631 (1982); see also North Carolina v. Rice, 404 U.S. 244, 248 (1971) ("Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter.").

Here, to avoid the mootness issue, Petitioner attempts to repackage his claim from one challenging the revocation without a hearing of his PRS stemming from his 2005 convictions leading to his intermittent confinement in prison during the time period from May 22, 2017, to December 11, 2017, to one alleging wrongful pretrial detention in prison on his 2016 pending felony charges during the time period from May 22, 2017, to December 11, 2017. (Compare Watson, No. 1:18CV451, Docket Entry 2, ¶ 12(Ground One), with Docket Entry 7, ¶ 12 (Ground One).) However, the record before the Court conclusively establishes that Petitioner's active prison sentences for his 2005 convictions expired on April 16, 2015, when he began his five-year term of PRS, see Watson, No. 1:18CV451, Docket Entry 13-4 at 1, that the PRSPC arrested Petitioner on the new 2016 felony charges on January 3, 2017, see id., that Petitioner waived a preliminary hearing and a PRSPC hearing until after resolution of his 2016 charges, see id., Docket Entry 13-8, that Petitioner experienced intermittent (and brief) periods of confinement in prison from May 22, 2017, to December 11,

-13-

2017, see Watson, No. 1:17CV977, Docket Entry 2 at 9, 19, 22, 24, 26, 30, 34), that the PRSPC terminated Petitioner's PRS arising from his 2005 convictions on December 11, 2017, see Watson, No. 1:18CV451, Docket Entry 13-3 at 1, and that Petitioner thereafter remained in the Guilford County jail until his trial on the 2016 charges in late February 2018 (see Docket Entry 16-6). In other words, any time Petitioner spent in prison from May 22, 2017, to December 11, 2017, arose out of his violation of the terms of his PRS which formed a part of his 2005 convictions and sentences, and not his 2016 then-pending felony charges. Because Ground One attacks only the procedures and conditions of Petitioner's expired term of PRS, Petitioner "urg[es] . . . the correction of a sentence already served," Rice, 404 U.S. at 248, and the Court should deny Ground One as moot.

## 2. Ground Two

Petitioner's second ground for relief alleges that "[he was] denied [the] right of access to counsel" (Docket Entry 7, ¶ 12(Ground Two) (standard capitalization applied)) because, "[o]n [May 22, 2017], Petitioner transferred over 200+ miles away from [the] place of [the] alleged crime and away from [his] court appointed counsel," "could not relay information to [his] attorney to file [a] motion to suppress evidence," and "could not communicate with counsel to discuss a plea bargain" or "to discuss being sent to prison prior to trial" (id., ¶ 12(Ground Two)(a)); see also Docket Entry 9 at 4-6). Petitioner's arguments fail as a matter of law.

-14-

"A criminal defendant's Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, which at least includes the point of formal charge, indictment, information, preliminary hearing, or arraignment." United States v. Cain, 524 F.3d 477, 481 (4th Cir. 2008) (citing McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)).  In this case, Petitioner's Sixth Amendment right to the effective assistance of counsel attached, at the latest, on January 23, 2017, the date a grand jury indicted Petitioner on his 2016 felony charges. (See Docket Entry 12-7 at 21-23.)  Moreover, because Petitioner remained in jail and/or prison from the time of his indictments through his trial, the jail and/or prison must have afforded him "a reasonable opportunity to seek and receive the assistance of attorneys," and jail and/or prison "practices that unjustifiably obstruct the availability of professional representation [to inmates] . . . are invalid." Procunier v. Martinez, 416 U.S. 396, 419 (1974) (citing Ex parte Hull, 312 U.S. 546 (1941)), partially overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).  Here, Petitioner's allegations of denial of the right of access to counsel fail as conclusory and unsupported.  See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that, "[i]n order to obtain an evidentiary hearing on an ineffective assistance of counsel claim[,] . . . a habeas petitioner must come forward with some evidence that the claim might have merit," and that "[u]nsupported, conclusory allegations do not entitle a habeas

-15-

petition to an evidentiary hearing"), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996).

Although Petitioner alleges that his transfer to the Craven CI on May 22, 2017, placed him "over 200+ miles from [the] place of [the] alleged crime and away from [his] court appointed counsel," and that he "could not communicate with counsel" about certain matters (Docket Entry 7, ¶ 12(Ground Two)(a)), Petitioner neither alleges that the transfer actually prevented him from any communications with his counsel through in-person visits, telephone calls, or written correspondence, nor provides the Court with any proof, beyond his own unsupported allegations, about unsuccessful attempts to reach his counsel through any of those means (see id.; see also Docket Entry 9 at 4-6, Docket Entry 15 at 3-4).

Petitioner's assertions in Ground Two also ignore the facts that 1) Petitioner remained in the Guilford County jail from the date of his arrest by officers with the Greensboro Police Department on December 29, 2016, to May 22, 2017, when he transferred to the Craven CI (located approximately 190 miles from the Guilford County jail), 2) Petitioner transferred back to the Guilford County jail just eight days later and remained there from May 30, 2017, to June 22, 2017, when he returned to the Craven CI, 3) he transferred back to the Guilford County jail 18 days later on July 10, 2017, and remained there until to August 1, 2017, when he transferred to the Caswell CC (located approximately 40 miles from the Guilford County jail), and 4) he transferred back to the Guilford County jail on October 4, 2017, and remained there through

-16-

his trial in late February 2018 (see Docket Entry 9 at 4). See Watson, No. 1:17CV977, Docket Entry 2 at 9, 19, 22, 24, 26, 30, 34. Thus, the record establishes that Petitioner remained at a distance of approximately "200[] miles from [the] place of [the] alleged crime [in Greensboro, North Carolina,] and away from [his] court appointed counsel" (both located in Greensboro, North Carolina) for a total of 26 days (or approximately six percent) of the 427 days from his arrest on December 29, 2016, to his convictions and sentencing on March 1, 2018. Petitioner's presence in the Craven CI for such a small percentage of the time between his arrest and trial undermines his bald assertion that his time in prison denied him access to counsel.

Moreover, the record, insofar as it reflects matters occurring between Petitioner's arrest and trial, further forecloses relief. Although Petitioner alleges that he "could not communicate with counsel to discuss a plea bargain sent to him in the mail" (Docket Entry 7, ¶ 21(Ground Two)(a)), Petitioner's first trial counsel averred that "[he] visited [Petitioner] in jail on June 22[, 2017] to discuss [Petitioner's] cases and consider the plea offer" (Docket Entry 16-2, ¶ 4), which offer counsel deemed "reasonable" (id., ¶ 3). "[Counsel's] advice to [Petitioner] [wa]s that a jury trial present[ed] too many risks and that he should consider the plea offer." (Id., ¶ 7.) According to counsel, "[Petitioner] literally became enraged at [counsel's] statement and told [counsel he] was helping the prosecution and not [acting] in [Petitioner's] best interests." (Id., ¶ 8.) "[Petitioner] told [counsel] he

-17-

want[ed] another lawyer and instructed [counsel] to file [a] motion to withdraw." (Id., ¶ 10.) Petitioner also filed his own motion to have counsel removed and new counsel appointed. (See Docket Entry 12-7 at 24.) On July 24, 2017, the trial court allowed both motions and appointed Petitioner's second trial counsel. (See id.)[7]

Despite Petitioner's conclusory allegation that he "could not relay information to [his] attorney to file [a] motion to suppress evidence" (Docket Entry 7, ¶ 12(Ground Two)(a)), the record demonstrates that his second trial counsel filed a motion to suppress on November 22, 2017, along with a supporting memorandum and two supporting affidavits (see id. at 25-33) and, on February 27, 2018, argued in support of that motion at a hearing, calling both affiants as witnesses (see Docket Entry 12-10 at 12-59).

_____

[7] Petitioner alleges that his second trial counsel "was assigned officially by the [trial c]ourt to represent Petitioner[] on November 16, 2017," and thus Petitioner argues that he "had no access to any counsel to examine, discuss, and review the plea offer" from the time between the trial court's removal of his first trial counsel on July 24, 2017, and the "official[]" assignment of his second trial counsel on November 16, 2017. (Docket Entry 9 at 5.) That argument lacks merit. The trial court appointed Petitioner's second trial counsel on July 24, 2017 (Docket Entry 12-7 at 24), and Petitioner's own evidence shows that his second trial counsel corresponded with Petitioner on September 27, 2017, and "enclosed a copy of the plea offer extended by the State," Watson, No. 1:18CV451, Docket Entry 28-3. Petitioner's apparent attempt to rely on a discussion between the trial court and the prosecutor at the conclusion of the hearing on Petitioner's Motion to Dismiss and/or Application for a Writ of Habeas Corpus on November 16, 2017, misses the mark. In that discussion, the prosecutor merely noted that "[s]ome of the[] files reflect[ed] that [Petitioner's] previous attorney . . . was still [Petitioner's] lawyer even though [Petitioner's second trial counsel] [wa]s supposed to be on all of [Petitioner's] cases." (Docket Entry 16-1 at 15.) The trial court responded, "Madam Clerk, if you will check that and to the extent [Petitioner's first trial counsel] is still on any of those cases, take him off and put [Petitioner's second trial counsel] on as attorney of record." (Id. at 16.) The mere fact that, due to a clerical error, some of the trial court's files did not yet reflect Petitioner's second trial counsel as attorney of record does not establish that Petitioner's second trial counsel did not actually serve as Petitioner's attorney of record as of July 24, 2017, the date of the trial court's order appointing him.

-18-

Petitioner neither elucidates what information he could not relay to trial counsel for inclusion in the motion to suppress, nor how counsel's lack of such information prejudiced Petitioner. (<u>See</u> Docket Entries 2, 9, 15.) That failure precludes relief.

Regarding Petitioner's contention that he could not "discuss being sent to prison prior to trial" with his trial counsel (Docket Entry 7, ¶ 12(Ground Two)(a)), as discussed above, Petitioner remained represented during that time by his second appointed trial counsel (<u>see</u> Docket Entry 12-7 at 24), and Petitioner has not established that his brief stays in prison denied him access to his counsel. Moreover, despite representation by his second trial counsel, Petitioner proceeded to file a <u>pro se</u> Motion to Dismiss and/or Application for a Writ of Habeas Corpus with the trial court (Docket Entry 12-7 at 34-36), and Petitioner's second trial counsel ensured that Petitioner obtained a hearing on his <u>pro se</u> motion(s) on November 16, 2017, as reflected in the following on-the-record discussion during that hearing:

> [TRIAL COUNSEL]: <u>I did ask [the prosecutor] to bring [Petitioner] over today</u>. . . . I believe [Petitioner's] case is likely to go in front of the jury sometime in December [2017] or January [2018] if I'm understanding correctly. So <u>I thought that these issues needed to be resolved</u>. . . .
>
> <u>Your Honor, I met with [Petitioner] on Tuesday as I told you. We had a good conversation</u>. I took over this case, I believe, in early August, possibly late July, of [2017], Your Honor. . . . <u>I have got quite a few motions that [Petitioner] has filed essentially on the same issue</u>. And with the [c]ourt's indulgence, <u>I was hoping the [c]ourt would hear from [Petitioner] about this so that this issue could be resolved</u> . . . . I believe he is going to ask the [c]ourt to dismiss pending charges that he's facing at this point.

-19-

> T[RIAL] COURT: Do you wish to go over any of the allegations [Petitioner] is making, the legal arguments?
>
> [TRIAL COUNSEL]: <u>I think [Petitioner] wanted to address the [c]ourt on those, Your Honor</u>.
>
> T[RIAL] COURT: Are you cognizant of them? Can you also address them?
>
> [TRIAL COUNSEL]: <u>I believe, Your Honor, that I'm cognizant of them</u>. I don't believe that I can present them in court.

(Docket Entry 12-4 at 6-7 (emphasis added).) The above-quoted colloquy makes clear that Petitioner <u>did</u> discuss his transfers to prison prior to trial with his second trial counsel.

In short, Ground Two fails as conclusory and meritless.

3. <u>Ground Three</u>

Via Ground Three, Petitioner contends that "[he was] denied [the] right to counsel" (Docket Entry 7, ¶ 12(Ground Three) (standard capitalization applied)), because "Petitioner's [first] assigned [trial] counsel . . . was not present" at the hearing on Petitioner's Motion to Dismiss and/or Application for a Writ of Habeas Corpus in the trial court, and Petitioner's second trial counsel "stood by but would not represent Petitioner nor address [the] claims of Petitioner's habeas motion" (<u>id.</u>, ¶ 12(Ground Three)(a); <u>see also</u> Docket Entry 9 at 6-8; Docket Entry 15 at 4-5). Petitioner's contentions do not warrant relief.

As discussed above, Petitioner successfully moved the trial court to remove his first trial counsel on July 24, 2017 (<u>see</u> Docket Entry 12-7 at 24), and Petitioner's second trial counsel attended the hearing on Petitioner's Motion to Dismiss and/or Application for a Writ of Habeas Corpus in the trial court on

-20-

November 16, 2017 (<u>see</u> Docket Entry 16-1). Although Petitioner's second trial counsel declined to argue Petitioner's <u>pro se</u> contentions, Petitioner clearly insisted on filing those arguments <u>pro se</u> and indicated that <u>he</u> wanted to present those arguments to the trial court:

> T[RIAL] COURT: Do you wish to go over any of the allegations [Petitioner] is making, the legal arguments?
>
> [TRIAL COUNSEL]: <u>I think [Petitioner] wanted to address the [c]ourt on those, Your Honor</u>.
>
> T[RIAL] COURT: Are you cognizant of them? Can you also address them?
>
> [TRIAL COUNSEL]: I believe, Your Honor, that I'm cognizant of them. <u>I don't believe that I can present them in court</u>.

(Docket Entry 12-4 at 6-7 (emphasis added).)[8]

Accordingly, Petitioner has failed to establish a denial of his right to counsel at the hearing on his Motion to Dismiss and/or Application for a Writ of Habeas Corpus in the trial court.

4. <u>Ground Four</u>

Lastly, Petitioner maintains that "[he was] denied [the] right to a fair trial proceeding" (Docket Entry 7, ¶ 12(Ground Four) (standard capitalization applied)), because "[he was] punished and imprisoned in [a] state correctional facility prior to guilt," Petitioner was "housed in [the] same agency as convicted felons,

---

[8] Petitioner's second trial counsel likely could not address Petitioner's arguments due to the North Carolina Rules of Professional Conduct. <u>See</u> N.C. R. Prof. Cond. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."); <u>see also</u> <u>In re Small</u>, 201 N.C. App. 390, 393-94 (2009) (recognizing that trial court possessed "inherent authority" to sanction criminal defendant's attorney for filing frivolous motions).

-21-

although presumed innocent," Petitioner was "denied access to his attorney to prepare a defense," Petitioner "was not represented at [the] habeas hearing," his "[M]otion to [D]ismiss on above issues was not heard," his Application for a Writ of Habeas Corpus was "denied although there was no legal judgement," and a "[p]lea [was] sent to Petitioner through [the] U.S. Mail while [he was] in prison as a pretrial detainee" (id., ¶ 12(Ground Four)(a); see also Docket Entry 9 at 8-10; Docket Entry 15 at 6). Those assertions lack merit.

As discussed above in the context of Ground One, Petitioner's argument that "[he was] punished and imprisoned in [a] state correctional facility prior to guilt" and was "housed in [the] same agency as convicted felons, although presumed innocent" (Docket Entry 7, ¶ 12(Ground Four)(a)) fails as moot. Furthermore, as detailed in the discussion of Ground Two, Petitioner has not shown that his short stints at the Craven CI denied him access to either of his appointed trial counsel. Moreover, as already addressed in the analysis of Ground Three, Petitioner remained represented by his second trial counsel at the hearing on his Motion to Dismiss and/or Application for a Writ of Habeas Corpus, but Petitioner insisted on pursuing those matters pro se.

Petitioner's assertion that his "[M]otion to [D]ismiss . . . was not heard," and that his Application for a Writ of Habeas Corpus was "denied although there was no legal judgement" (id.) falls short. The trial court denied Petitioner's Application for a Writ of Habeas Corpus for lack of jurisdiction in open court (see

-22-

Docket Entry 16-1 at 14-15), and Petitioner did receive the trial court's Order filed on November 27, 2017, denying his Application for a Writ of Habeas Corpus. See Watson, No. 1:18CV451, Docket Entry 2 at 16. Moreover, although the record lacks any evidence that the trial court entered a written order denying Petitioner's Motion to Dismiss, that Motion raised the very same argument that the trial court addressed and denied both in open court and in its Order denying Petitioner's Application for a Writ of Habeas Corpus. (Compare Docket Entry 12-7 at 34-36, with Docket Entry 16-1 at 14-15 (denying Application for a Writ of Habeas Corpus in open court after hearing), and Docket Entry 12-5 (written order denying Application for a Writ of Habeas Corpus).)

Lastly, Petitioner's contention that a "[p]lea [was] sent to Petitioner through [the] U.S. Mail while [he was] in prison as a pretrial detainee" (Docket Entry 7, ¶ 12(Ground Four)(a)) fails to allege any constitutional violation. Moreover, as already detailed above, Petitioner's first appointed trial counsel presented a reasonable plea offer to Petitioner in person at the Guilford County jail in June 2017 (which plea Petitioner emphatically rejected) (see Docket Entry 16-2, ¶¶ 3, 4, 7, 8), and Petitioner remained represented by his second trial counsel when he mailed Petitioner a copy of a plea offer on September 27, 2017, see Watson, No. 1:18CV451, Docket Entry 28-3. Finally, as discussed above, Petitioner has not established that his short stays in prison during the time period from May 22, 2017, to December 11,

-23-

2017, denied him access to either of his appointed trial counsel to discuss plea offers.

In sum, Ground Four entitles Petitioner to no relief.

### V. Conclusion

**IT IS THEREFORE RECOMMENDED** that the Petition (as amended) (Docket Entry 7) be denied, that Respondent's Motion for Summary Judgment (Docket Entry 11) be granted, and that a Judgment be entered dismissing this action, without issuance of a certificate of appealability.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

December 3, 2019

-24-